UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER JAMES NICKALASKEY,<br><br>Defendant. | 3:24-CR-00026-SLG-MMS-1<br><br>**REPORT AND RECOMMENDATION<br>ON MOTION TO DISMISS [DKT. 47]** |

## I. MOTION PRESENTED

The indictment, filed in February 2024, charges Christopher James Nickalaskey ("Nickalaskey") with two counts of being a felon in possession of firearms[1] and two criminal forfeiture allegations.[2] Dkt. 2. Nickalaskey moved to dismiss the indictment based on the Ninth Circuit's decision in *United States v. Duarte*.[3] Dkt. 47. He argues (1) that *Duarte* found prohibiting persons convicted of non-violent felonies, such as simple possession of controlled substances and a prior charge of being a felon in possession of a firearm, to violate the Second Amendment; and (2) as applied to his case, the indictment should be dismissed. *See generally*, *id.*

---

[1] 18 U.S.C. §§ 922(g) and 924(a)(8).
[2] 18 U.S.C. § 924(d), 28 U.S.C. § 2461(c), Fed. R. Crim. P. 32.2(a).
[3] 101 F.4th 657 (9th Cir. 2024).

The government responded in opposition, asking this Court to hold the motion in abeyance until the Ninth Circuit ruled on the motion for rehearing en banc, and further argued that *Duarte* was incorrectly decided, citing *United States v. Rahimi*.[4] *See generally*, Dkt. 54. This Court held the motion in abeyance and instructed the government to submit a status report by "August 15, 2024, or sooner should the Ninth Circuit rule on the petition" Dkt. 57.

The Ninth Circuit granted the motion for a rehearing.[5] The government has not submitted a status report, but because this Court has been otherwise made aware of the Ninth Circuit's ruling, this Court **TERMINATES** the government's obligation to submit a status report. No evidentiary or motions hearings were held.

This Court hereby issues its Report and Recommendation regarding Nickalaskey's Motion to Dismiss, Dkt. 47. For the reasons below, the motion should be **DENIED WITHOUT PREJUDICE**. 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL BACKGROUND

The indictment charges Nickalaskey with having been convicted of two felonies: being a felon in possession of a firearm and Fourth Degree Misconduct Involving Controlled Substances.[6] For the purposes of this motion, these prior convictions are not in dispute. As to the first charge, in September of 2023, a police officer stopped a vehicle for having improperly tinted windows Nickalaskey was in the vehicle and it was discovered

---

[4] 144 S. Ct. 1889 (2024).
[5] *See United States v. Duarte*, No. 22-50048, 2024 WL 3443151, at *1 (9th Cir. July 17, 2024).
[6] Dkt. 2 at 2.

that he possessed a firearm.[7]  As to the second charge, officers responded to a call for service involving Nickalaskey while he was vacating an apartment.  He subsequently resisted arrest and shot a police officer.[8]  While this occasion may constitute sufficient violence to make *Duarte* inapplicable, this Court will not consider it at this time because *Duarte* is no longer good law.

### III. DISCUSSION

Nickalaskey's charges fall outside of the protections of the Second Amendment. Not only does this Court not read *Bruen* to generally protect non-violent[9] felons, but it is bound by *Vongxay*.

### a. 21st Century Second Amendment Supreme Court Jurisprudence.

The Second Amendment protects the individual right to own firearms.  It reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[10]  In *District of Columbia v. Heller*, the Supreme Court clarified that the Second Amendment applied to individuals without regard to any militia service, finding D.C.'s ban on handgun possession in the home to be a violation of individual rights.[11]  However, the Court did not rule that this right is absolute. Instead, it emphasized that there is no "right to keep and carry any weapon whatsoever in

---

[7] Dkt. 47 at 2.
[8] Dkt. 47 at 2–3; Dkt. 54 at 2.
[9] This Court is assuming for the purpose of this motion that Mr. Nickalaskey is a non-violent felon, though it notes that has detained him pre-trial in part due to the danger that he presents to the community.  Dkt. 9.
[10] U.S. Const. Amend. II.
[11] 554 U.S. 570, 635 (2008).

any manner whatsoever and for whatever purpose[.]" *Id.* at 626. The Court cautioned lower courts to not misread its ruling, writing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons [. . .]." *Id.* at 626–27.

In *McDonald v. City of Chicago*, the Supreme Court incorporated the Second Amendment into the Fourteenth Amendment right to Substantive Due Process.[12] The Court "repeat[ed its] assurances" that limitations, such as "prohibitions on the possession of firearms by felons" would remain constitutional. *Id.* 786. However, neither *Heller* nor *McDonald* involved felons in possession of firearms, so these assurances are dicta. Nevertheless, that language is dicta does not mean that it is of no moment. "[D]icta from the Supreme Court is not something to be lightly cast aside."[13] "Well-reasoned dicta is the law of the [9th] circuit."[14] Without diverging guidance from the Supreme Court or controlling precedent from the Ninth Circuit or the District of Alaska, this Court is hesitant to dismiss or ignore these assurances.

*New York State Rifle & Pistol Association v. Bruen*[15] has caused much excitement, anger, and confusion in the legal community, and American politics more broadly. However, the spotlight on *Bruen* has often dimmed around its core ruling. Post *Heller* and *McDonald*, many circuit courts had utilized a two-step test for Second Amendment challenges. *Id.* at 2126 (discussing cases). The first step was that the government could

---

[12] 561 U.S. 742 (2010).
[13] *Zack v. Tucker*, 704 F.3d 917, 923 (11th Cir. 2013).
[14] *Enying Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013).
[15] 142 S. Ct. 2111 (2022).

4

justify a restriction by "establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood." *Id.* The second step was to determine "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.*

But *Bruen* found this to be "one step too many." *Id.* at 2127. The Court ruled that:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–30. *Bruen* also responded to many circuit courts applying heightened, or intermediate, scrutiny.[16] Intermediate scrutiny, in the Court's opinion, is a form of "means-end" analysis that balances the interests of would-be gun owners and the government. *Id.* However, the Court found that *Heller* did not support this form of analysis, writing that "[t]he Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense."[17] In summary, the adoption of the Second Amendment was the means test itself, and subsequently, the protections afforded by it are not subject to another round of interest balancing.

The Court continued that *Bruen* "made the constitutional standard endorsed in *Heller* more explicit,"[18] and as such, did not consider its decision in *Bruen* to be departing from *Heller* or *McDonald*. Rather, it was a further clarification to the lower courts on the

---

[16] *Id.* at 2129.
[17] *Id.* at 2131 (quoting *Heller*, 554 U.S. at 635) (emphasis in original).
[18] *Id.* at 2134.

*Heller* rule. *Bruen* also hints that the Supreme Court's assurance that the Second Amendment does not impact the government's ability to disarm convicted felons continues by its seemingly intentional emphasis on "law-abiding" persons. For instance, Justice Thomas, writing for the majority, began the opinion with the simple premise that "[i]n [*Heller*] and [*McDonald*], we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Id.* at 2122.

Recently, the Supreme Court decided *United States v. Rahimi*.[19] In *Rahimi*, the Court was presented with a *Bruen* challenge to Sec. 922(g)(8), which prohibits persons under a domestic violence restraining order from possessing firearms. The Court found Sec. 922(g)(8) constitutional as applied. *Id.* at 1896–97. In writing for the majority, Chief Justice Roberts rejected Rahimi's argument that *Heller* "invalidated an 'absolute prohibition of handguns ... in the home.'" *Id.* at 1902. In doing so, he wrote, "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* While this again is dicta, it is not without weight.

*Heller*, *McDonald*, *Bruen*, and *Rahimi* each discuss and contemplate the Second Amendment in the context of law-abiding citizens, and the former two could not have been clearer in showing the intentions of the justices. While *Bruen* has left many questions open

---

[19] 144 S. Ct. 1889 (2024).

6

Case 3:24-cr-00026-SLG-MMS   Document 62   Filed 08/01/24   Page 6 of 9

for the courts to consider, the Supreme Court has been explicit in how it expects the question surrounding felons in possession of firearms to be answered.

### b. *Vongxay* and *Duarte*.

The Ninth Circuit has found that prohibiting felons from possessing firearms passes Second Amendment scrutiny. In *United States v. Vongxay*, the court found that "[d]enying felons the right to bear arms is [ ] consistent with the explicit purpose of the Second Amendment to maintain 'the security of a free State.'"[20] Further, it observed that the right was "inextricably tied to the concept of a virtuous citizenry."[21] The Court further noted that "felons were excluded from the right to arms because they were deemed incapable of virtue."[22] The court's "examination ... of historical gun restrictions ... lends credence to the post-*Heller* viability" of its previous determination that felon-in-possession laws do not violate the Second Amendment.[23]

This Court has previously found that *Vongxay* continues post-*Bruen*.[24] Since then, a Ninth Circuit panel found that *Vongxay* was "'clearly irreconcilable' with *Bruen*" and found that the Second Amendment was violated when a non-violent felon was convicted for possessing a firearm.[25] However, the Ninth Circuit granted the government's motion

---

[20] 594 F.3d 1111, 1117 (9th Cir. 2010).
[21] *Id.* at 1118 (cleaned up).
[22] *Id.* (cleaned up).
[23] *Id.* at 1116.
[24] *See, e.g.*, *United States v. Miller*, 3:23-cr-00024-TMB-MMS-1, Final Report and Recommendation at Docket No. 42 at 3–4, n.11 (D. Alaska Feb. 26, 2024).
[25] *United States v. Duarte*, 101 F.4th 657, 667 & 691 (9th Cir. 2024).

for a rehearing en banc and thereby vacated the panel's opinion.[26] As such, *Vongxay* is again good law. This Court is bound by *Vongxay*, and the motion should be denied.

The Ninth Circuit has not scheduled oral argument until September 23,[27] and it could be many more months before the matter is decided, and even longer if a party appeals to the Supreme Court of the United States. Instead of continuing to hold the motion in abeyance for what will be months, perhaps years, the motion should be denied. However, it should be denied without prejudice to give the defendant an opportunity to litigate his argument should the Ninth Circuit's en banc decision overrule *Vongxay*.

## IV. CONCLUSION

For the reasons set forth above, Nickalaskey's Motion to Dismiss should be **DENIED WITHOUT PREJUDICE**. 28 U.S.C. § 636(b)(1)(B).

DATED this 1st day of August, 2024, at Anchorage, Alaska.

_____
MATTHEW M. SCOBLE
CHIEF U.S. MAGISTRATE JUDGE

Pursuant to D. Alaska Loc. Mag. R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than the CLOSE OF BUSINESS on August 15, 2024. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo*, et al., 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed

---

[26] *United States v. Duarte*, No. 22-50048, 2024 WL 3443151 (9th Cir. July 17, 2024).
[27] *United States v. Duarte*, No. 22-50048 at Docket No. 82 (9th Cir. July 17, 2024).

five (5) pages in length and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before the CLOSE OF BUSINESS on August 22, 2024. The parties shall otherwise comply with provisions of D. Alaska Loc. Mag. R. 6(a). Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).